96 So.2d 674

**Arthur A. RICKMAN**

v.

**Shirley RICKMAN.**

**3 Div. 764.**

Supreme Court of Alabama.

June 27, 1957.

Rehearing Denied Aug. 22, 1957.

Jack Crenshaw, Montgomery, for appellee.

Wm. J. Fuller, Jr., Montgomery, for appellant.

LIVINGSTON, Chief Justice

This appeal is from a decree of the Circuit Court of Montgomery County, Alabama, in Equity, rendered upon proceedings supplementary to a divorce decree entered by that court.

On February 16, 1955, appellee, the wife, filed her original bill of complaint in the Circuit Court of Montgomery County, Alabama, in Equity, seeking a divorce from the appellant, the husband, on the ground of cruelty. The bill alleged that there was one child, Phyllis Rita Rickman, age 12, of

the marriage between appellant and appellee. On the submission of the divorce proceedings, the Circuit Court of Montgomery County, in Equity, entered a decree on February 26, 1955 granting the appellee a divorce from the appellant and alimony in the sum of $400 per month, payable in equal semimonthly installments, on the first and fifteenth day of each month, together with an additional sum of $100 per month for the support and maintenance of the minor daughter, Phyllis.

The original bill alleged that on December 7, 1954, the parties to the divorce proceedings entered into an agreement wherein the parties agreed that the appellant would pay to the complainant the sums indicated. The bill for divorce also alleged that the appellant, Arthur A. Rickman, was a bona fide resident of Montgomery, Alabama. By verified answer, the appellant, respondent in the divorce proceedings, admitted the allegation as to the residence of the parties and the date of the marriage of the parties, and also waived any notice of taking testimony and consented that the cause proceed to a final decree without further or other notice to him.

The supplementary proceedings giving rise to the decree from which this appeal was taken was filed on September 12, 1955. It took the form of 4 separate petitions as follows:

"1. A petition for citation for contempt for failure of Appellant to pay the alimony after April 1, 1955 in accordance with the Court's decree of February 26, 1955.

"2. A petition to modify the decree and increase the award of alimony.

"3. A petition to require the father to defray the extraordinary expense for orthodontic treatment urgent from the standpoint of health of the minor child.

"4. A petition to clarify the visitation provisions of the original decree, since the Appellee had moved to New York and the Appellant was now residing in the District of Columbia."

All of these petitions were set for hearing on October 7, 1955, and service was obtained by registered mail.

To each of these petitions, the appellant filed motions to dismiss, based primarily upon the allegation that neither party was a resident of the State of Alabama at the time of the filing of the petitions in the supplementary proceedings, and that, therefore, the court had no jurisdiction to grant the relief prayed for. In so far as custody was concerned, the motion to dismiss also raised the proposition that the minor child of the parties was not a resident of the state at the time of the rendition of the divorce decree of February 26, 1955, and that, therefore, the court had no jurisdiction over said minor child and no authority to render any decree with respect to her.

On January 14, 1956, the court rendered a decree denying the motions of the appellant to dismiss the appellee's petitions and set said petitions for hearing on February 1, 1956. No appeal was taken from that decree and it is not assigned as error on this appeal.

The respondent, appellant here, then filed answers to the various petitions and personally appeared in court at the time of the hearing. The answer to contempt proceedings was based upon a claim of inability to pay, and asked that his answer be taken as a petition to modify the support provisions contained in the decree rendered on February 26, 1955. The answer did not claim that the appellee had in any way violated any of the terms of the decree of February 26, 1955, but did contend that the appellee, in violation of the agreement of the parties dated December 7, 1954, began to destroy the child's regard for her father.

The answer to the petition for increase in support adopted the answer to the contempt proceedings and pointed out that prior to the divorce proceedings the appellee filed a joint income tax return and knew the appel-

lant's return for the year 1954. This answer also prayed for a reduction in alimony.

The answer to the petition for orthodontic treatment claimed that the alleged costs were unreasonable and that the respondent was financially unable to provide such treatment, and that the appellee agreed to pay for such treatment in the agreement between the parties dated December 7, 1954.

The answer to the petition for clarification of the visitation provisions pointed out that it was contemplated by the parties that at the time the divorce was granted the complainant would reside with the child in New York City "and that the respondent would reside in Washington, D. C." The answer claimed that a limitation on the visiting privileges as suggested by the complainant would be unreasonable.

The testimony of the appellee, which resulted in the decree here appealed from, was to the effect that at the time she signed the bill for divorce, she was in the office of Mr. Rickman's attorney in Washington, D. C., who prepared the original bill and that the statement that Mr. Rickman was a bona fide resident of the city and county of Montgomery was information given to her by Mr. Rickman's attorney. The original agreement dated December 7, 1954 was also offered in evidence. This agreement provided for an appraisal of the house jointly owned by the parties, and that the husband would pay to the wife a sum equal to one-half of the net equity valuation of the real estate. It is specifically provided in paragraph 3 "the husband agrees to pay and the wife agrees to accept the sum of $400 per month, commencing on December 1, 1954, payable in equal semimonthly installments on the first and fifteenth day of each month for her support and maintenance until her death or until she remarries, whichever event shall first occur." With reference to the support of the child, the agreement provided that the husband agrees to pay and the wife agrees to accept the sum of $100 per month, commencing on December 1, 1954, for the support and maintenance of their minor daughter until said daughter reaches the age of twenty-one years, or marries, whichever event shall first occur.

The complainant further testified, and it was admitted by the respondent, that after the decree of February 26, 1955, the husband had paid to Mrs. Rickman the sum of only $600 of the award of $400 per month alimony. Appellant further admitted that he signed the agreement of December 7, 1954, providing for monthly payments of $400 alimony, and that he was present in Montgomery and represented by counsel at the time of the original proceedings and did not ask the court at that time for any reduction in the $400 per month alimony and $100 per month for the support of the child made in the agreement of December 7, 1954.

Appellant sought to excuse his failure to comply with the specific provisions of the decree of February 26, 1955 by evidence tending to prove his inability to pay, including payments made prior to the institution of the divorce proceedings and pursuant to the agreement of December 7, 1954, by which the appellant, in effect, purchased appellee's one-half interest in the home in Washington, appraised at $43,600. He also admitted that his gross earnings for the past seven or eight years were approximately $25,000 per year. He also admitted that he was occupying the $43,600 home by himself. Complainant also introduced a letter from appellant, dated April 8, 1955, in which it was stated that Mrs. Rickman would not receive any further monies for herself. He sought to justify this letter by a letter from his daughter refusing to come from New York to Washington, D. C., to visit him. Appellant sought to prove that Mrs. Rickman had attempted to aleniate the daughter's affection for her father, which testimony was refuted by the daughter. The testimony of the appellee was to the effect that it required substantially more than $400 per month for her and the child to live in New York where she now resides; but be that as it may, the court decree denied the appellee's petition to increase the alimony payments and also denied appellant's petition to reduce the said payments.

With reference to the orthodontic treatment, complainant's testimony was to the effect that no provision was made in the agreement of December 7, 1954 about extraordinary medical or dental expenses and that this was not discussed at the time the agreement was signed by the parties, and that she had no outside income out of which this expense could be paid; she further introduced a letter, without objection, from Dr. Goldberg, an orthodontist, pricing this treatment at $1,000 and stating "the urgency of orthodontic treatment for this child from the standpoint of health is self-evident."

The court having heard this testimony orally rendered the decree from which this appeal was taken. As stated above, the prayer of both parties for a modification of the award was denied. The court determined the amount in arrears to be $4,000 and rendered judgment for that amount. The court further found, in effect, that the failure of respondent to make the payments was without just cause or lawful excuse, which constituted a contempt of court. The decree gave the respondent a reasonable time within which to purge himself of contempt by making two payments of $2,000 each, and continuing to make the payments required by the decree of February 26, 1955. The court further ascertained that $750 was a reasonable attorney's fees for complainant's attorney, and allowed this amount.

The court's decree further ordered the appellant to pay the expenses of necessary orthodontic treatment for his minor child, Phyllis, such payments to be made directly to the orthodontist and not to exceed the sum of $1,000. The court's decree further clarified the custody provisions of the decree of February 26, 1955, but gave respondent the right to visit the child in the City of New York twice a month, at reasonable hours of the day, provided one week's notice in advance of such visit was given; and further provided that should the respondent desire to have said minor child visit him in Washington during vacation periods, the respondent is required to defray the expenses of transportation of such minor child to and from Washington, D. C.,

and to furnish suitable adult accompaniment during such transportation.

Appellant assigns nine errors, which we will consider in the order in which they are argued in brief.

The first Assignment of Error is as follows:

"1. The Appellee, having willfully failed and refused to carry out the court's decree of February 26, 1955, as to the visitation privileges of the Appellant to the minor child of the parties, was in no position to complain that the Appellant was in arrears with the alimony payments, and the court therefore erred in decreeing to the contrary."

In the first place, the Assignment of Error assumes that the appellee willfully failed and refused to carry out the court's decree of February 26, 1955 as to the visitation privileges of the appellant to the minor child of the parties. The most that can be said of the evidence as to appellee's failure and refusal to carry the court's decree is that it is in conflict, but the effect of the court's decree is that she did not so fail and refuse, and we are unwilling to find to the contrary. Moreover, as we understand appellant's argument, it is based on an alleged refusal on the part of appellee to carry out certain provisions of the December 7, 1954 agreement between the parties as to visits by the daughter to the father. This court has many times held that a property settlement agreement becomes merged in the decree and loses its contractual nature. Colton v. Colton, 252 Ala. 442, 41 So.2d 398, and cases cited therein.

As to the custody of the child of the parties, the divorce decree of February 26, 1955, provided:

"4. That the Complainant shall have the custody of the minor child of the parties, Phyllis Rita Rickman, subject however to the right of the Respondent to see and visit with said child at all reasonable times and to share the

custody of said child during vacation periods."

It was held in Greene v. Greene, 249 Ala. 155, 30 So.2d 444, 446, as follows:

"Her testimony [in the case] indicates some dissatisfaction with the matter of visitation and the temporary custody of her child. But we are not impressed that this is a matter of any serious consequence. In any event it was a matter which could readily be remedied by an application to the court, which has full authority to regulate the question of visitation and temporary custody."

Assignment of Error No. 1 is without merit.

Assignment of Error No. 2 reads as follows:

"The court erred in rendering a personal judgment against the appellant, a nonresident of the State of Alabama, based on constructive service."

The appellant can take nothing by this assignment. We are aware of that line of cases in this jurisdiction, as well as elsewhere, that a personal judgment cannot be rendered on constructive service. See Campbell v. State, 242 Ala. 215, 5 So.2d 466; Ex parte Luther, 232 Ala. 518, 168 So. 596; Southern Cotton Oil Co. v. Woods, 201 Ala. 553, 554, 78 So. 907; Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565. But these cases have no application here. The appellant in this case was not a nonresident at the time of the institution of the original proceedings for divorce according to his own pleadings. He voluntarily accepted service and submitted himself to the jurisdiction of the court, and admitted that he was a resident of Alabama. In, short, his argument appears to be that since the original divorce decree was made and entered, he has removed from the jurisdiction and that the court rendering said decree is powerless to enforce it. In Campbell v. State, supra, cited by the appellant himself, this court said:

"The principle is fully established that when a person is personally before the court in its proceedings even because he himself instituted it or because he had personal service of the original process in the forum, all actions taken thereafter in that proceeding or supplementary to it may be begun by substituted service." [242 Ala. 215, 5 So.2d 471.]

See Ex parte Robertson, 235 Ala. 184, 177 So. 902; Adam v. Saenger, 303 U.S. 59, 58 S.Ct. 454, 82 L.Ed. 649. Also, see Code of 1923, Sec. 9491, Code of 1940, Title 7, Sec. 253; Equity Rule 116, Code of 1923, Sec. 6566, Code of 1940, Title 7, Appendix and Code 1923, Sec. 9431, Code of 1940, Title 7, Sec. 202.

Assignments of Error 3 and 4 present the same matters for review, and are rested on the alleged insufficiency of the evidence on which to base a holding that the appellant was in contempt because of his failure or refusal to pay the alimony provided in the decree granting a divorce to the appellee. Appellant argues that this failure to so comply was not due to contumacy on his part, but was from want of means.

Appellant's inability to pay, of course is a question of fact to be determined by the trial court from the evidence presented to him. That evidence was presented ore tenus. It would serve no good purpose to here set out that evidence, but suffice it to say, that we have carefully examined that evidence and cannot say that the trial court was in error in weighing it. In decreeing the $400 per month alimony in the suit for divorce, the trial court had before it the agreement of the parties of December 7, 1954, in which the appellant, in effect, admitted his ability to pay said sum.

Assignment of Error No. 5 is as follows:

"The court erred in directing the Appellant to make back alimony payments in the sums of '$2,000.00, on or before April 1, 1956,' in addition to continuing the monthly payments of $500.00 for

each of said months, without reduction, the evidence being undisputed that the Appellant was not financially able to make any such payments, but on the contrary, was heavily in debt."

As we have stated above, appellant's ability to pay is a question of fact to be determined by the trial court. In the instant case, it was determined adversely to appellant from evidence taken ore tenus, and under well known principles, we are unwilling to disturb that finding here. The appellant has no cause to complain in that back payments of alimony, then due, were ordered paid in two installments.

Assignment of Error No. 6 is not argued in brief and is, therefore, waived.

Assignment of Error No. 7 is as follows:

"The court erred in ordering the appellant to pay the sum of $1,000.00 for orthodontic treatment for the child of the parties, in view of the evidence that the Appellant was heavily in debt and in the face of the terms of the agreement between the parties that the 'wife (Appellee) agrees to indemnify the husband (Appellant) for any additional claims for the child's maintenance,' especially where the Appellee admittedly had the sum of $5,000.00 on hand out of money received by her from Appellant."

The testimony was undisputed that the daughter of the parties was in immediate need of orthodontic treatment. The decree of the trial court ordered the appellant to pay for such treatment, directly to the orthodonist, not to exceed $1,000.

Appellant's only argument is, that the property settlement agreement of December 7, 1954 contained the provision that "the wife should indemnify the husband for any additional claims for the child's maintenance."

Under the decisions cited above, this agreement became merged in the court's decree of February 26, 1955, and subject to

modification by the court as the welfare of the child might require.

Assignment of Error No. 8 is as follows:

"The court erred in ordering the Appellant to pay an attorney's fee in the sum of $750.00 to the attorney for the Appellee, where she admitted that she had already paid him and refused to disclose the amount of such payment, and the undisputed evidence showed that the Appellant had no means of making any such payment, and Appellee had $5,000.00 on hand received from Appellant."

This court stated in Keith v. Paden, 255 Ala. 294, 51 So.2d 9, 12:

"But where the divorce decree provided for alimony and maintenance, such provision continues to be within the power of the court to modify on account of changed conditions and, since the court retains such right, there is incidental to it also the right to an attorney's fee under proper circumstances."

See also Sims v. Sims, 253 Ala. 307, 45 So.2d 25, 15 A.L.R.2d 1246; Rochelle v. Rochelle, 235 Ala. 526, 179 So. 825.

Under the particular facts or circumstances of this case, it was proper to allow an attorney's fee, and appellant's Assignment of Error No. 8 is without merit.

Assignment of Error No. 9 is as follows:

"The court erred in arbitrarily limiting the right of the Appellant to two visits per month to the child of the parties, and then only upon one week's prior written notice."

Under this assignment, the appellant complains of that part of the decree clarifying the visitation privileges on the ground that the trial court had no jurisdiction of the child in the first instance. We cannot agree. In Ex parte Bates, 247 Ala. 391, 24 So.2d 421, this court quoted with approval the following from Anderson v.

Anderson, 74 W.Va. 124, 126, 81 S.E. 706, 707, as follows:

"That the children may not have been within the jurisdiction of the court at the time of the institution of the suit or entry of the decree is immaterial, since the parties litigant were the father and mother, and the cause of action, the right of custody, in so far as it affected the children, was between them, and the court had full jurisdiction over them with power to render a personal decree. Webb v. Ritter, 60 W.Va. 193, 234, 54 S.E. 484."

See also Little v. Little, 249 Ala. 144, 37 So. 2d 386, 171 A.L.R. 1399.

Appellant relies on Moss v. Ingram, 246 Ala. 214, 20 So.2d 202, and Lynn v. Wright, 252 Ala. 606, 42 So.2d 490; 34 Ala.App. 492, 497, 42 So.2d 484. We have carefully examined these cases and find that they do not support the position taken by appellant.

We find no error to reverse and the cause is affirmed.

Affirmed.

SIMPSON, GOODWYN and COLEMAN, JJ., concur.